Michele Arington
marington@ftc.gov
Christine M. Todaro
ctodaro@ftc.gov
Laura Basford
lbasford@ftc.gov
Benjamin R. Davidson
bdavidson@ftc.gov
(Each appearing pursuant to DUCivR 83-1.1(d)(1))
Counsel for Petitioner
FEDERAL TRADE COMMISSION
600 Pennsylvania Ave., NW
CC-8528
Washington, DC 20580
Tel.: 202-326-3157
Fax: 202-326-3395

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **Federal Trade Commission**, | Case No.: |
| Petitioner, | |
| vs. | PETITION TO ENFORCE CIVIL INVESTIGATIVE DEMAND AND MEMORANDUM OF LAW IN SUPPORT |
| **Complete Merchant Solutions, LLC** | |
| Respondent. | Judge |

### FEDERAL TRADE COMMISSION'S PETITION TO ENFORCE CIVIL INVESTIGATIVE DEMAND AND MEMORANDUM OF LAW IN SUPPORT

Petitioner, the Federal Trade Commission (the "FTC" or "Commission"), petitions this Court under Section 20 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 57b-1(e), (h), for an order requiring Respondent, Complete Merchant Solutions, LLC ("CMS"), to comply with a civil investigative demand, a form of administrative compulsory process, issued to CMS on November 5, 2019 ("2019 CID"). The Commission issued the 2019 CID in the course of an investigation concerning possible violations by Complete Merchant Solutions, LLC and its current and former officers and managers in their individual capacity, of Section 5 of the FTC Act, 15 U.S.C. § 45(a), and the Telemarketing Sales Rule ("TSR"), 16 C.F.R. § 310 *et seq.*

1

Section 5 of the FTC Act prohibits unfair or deceptive acts or practices; the TSR prohibits "abusive" telemarketing, including assisting and facilitating violations of the TSR. The 2019 CID directs CMS to respond to one document request, with subparts, and three interrogatories, with subparts.

CMS has refused to comply with the 2019 CID.[1]

The Commission has made no prior application to any court for similar relief and now seeks the aid of this Court through a summary proceeding to enforce the 2019 CID. A summary proceeding is necessary so that FTC staff may thoroughly conduct its investigation. As set forth below, the FTC has met all of the requirements for judicial enforcement of the 2019 CID. Therefore, the FTC respectfully asks this Court to enter an order requiring CMS either to produce the specified information or to appear and show cause why it should not comply with the 2019 CID in its entirety.

The Commission herewith submits the Declaration of Dotan Weinman designated as Petitioner's Exhibit (Pet. Ex.) 1, to verify the allegations herein. The Commission also submits the following additional exhibits:

| | |
|---|---|
| Pet. Ex. 2 | Civil Investigative Demand to Complete Merchant Solutions, LLC (Aug. 18, 2017); |
| Pet. Ex. 3 | August 14, 2019 Letter from Laura Basford to Complete Merchant Solutions, LLC; |
| Pet. Ex. 4 | October 10, 2019 Letter from Laura Basford to Complete Merchant Solutions, LLC; |
| Pet. Ex. 5 | October 21, 2019 Letter from Laura Basford to Complete Merchant Solutions, LLC; |

---

[1] To date, CMS has produced no interrogatory responses in response to the 2019 CID. The only documents CMS has produced are documents it previously provided to the FTC in separate FTC investigations. The 2019 CID does not seek responsive documents that were previously provided to the FTC.

| | |
|---|---|
| Pet. Ex. 6 | October 25, 2019 Letter from Mark Holscher to Laura Basford; |
| Pet. Ex. 7 | Civil Investigative Demand to Complete Merchant Solutions, LLC (Nov. 5, 2019); |
| Pet. Ex. 8 | 2019 CID Federal Express Delivery Confirmation (Nov. 8, 2019); |
| Pet. Ex. 9 | November 6, 2019 Letter from Laura Basford to Complete Merchant Solutions, LLC; |
| Pet. Ex. 10 | November 19, 2019 Letter from Allison Buchner to Laura Basford; |
| Pet. Ex. 11 | November 22, 2019 Letter from Laura Basford to Complete Merchant Solutions, LLC; |
| Pet. Ex. 12 | December 4, 2019 Letter from Christine Todaro to Complete Merchant Solutions, LLC; |
| Pet. Ex. 13 | December 5, 2019 Letter from Allison Buchner to Christine Todaro; and |
| Pet. Ex. 14 | December 13, 2019 Letter from Allison Buchner to Christine Todaro. |

## **The Parties**

1. The Commission is an administrative agency of the United States, organized and existing pursuant to the FTC Act, 15 U.S.C. § 41 *et seq.*  The Commission is authorized and directed by Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), to prohibit, *inter alia*, "unfair or deceptive acts or practices in or affecting commerce."  Additionally, the TSR authorizes the Commission to enforce its prohibition on deceptive and abusive telemarketing practices.  16 C.F.R. pt. 310.

2. The Commission has broad statutory authority to address unfair or deceptive acts or practices.  For example, Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits, and directs the Commission to combat, unfair methods of competition and unfair or deceptive acts or practices in or affecting commerce.

3. The FTC Act empowers the agency to investigate potential violations of these laws. Section 3 of the FTC Act, 15 U.S.C. § 43, authorizes the Commission to "prosecute any inquiry necessary to its duties in any part of the United States." Section 6 of the FTC Act, 15 U.S.C. § 46, empowers the Commission to gather and compile information concerning, and to investigate from time to time, the business and practices of persons, partnerships, or corporations engaged in or whose business affects commerce, with certain exceptions not relevant here. Section 20 of the FTC Act, 15 U.S.C. § 57b-1, empowers the Commission to require by CID the production of documents or other information relating to any Commission law enforcement investigation.

4. The Commission has promulgated three ongoing resolutions pertinent to this case, which authorize its staff to investigate various potential violations of the FTC Act and to use compulsory process to secure information related to these potential violations. The first resolution, File No. 012 3145, authorizes the use of compulsory process to investigate whether telemarketers, sellers or others assisting them have engaged in or are engaging in unfair or deceptive acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45, and/or deceptive or abusive telemarketing acts or practices in violation of the TSR, 16 C.F.R. pt. 310 (as Amended). Pet. Ex. 1, ¶ 41; Pet. Ex. 7 at 21.

5. The second resolution, File No. 9923259, authorizes the use of compulsory process "[t]o determine whether unnamed persons, partnerships or corporations have been or are engaged in the deceptive or unfair use of e-mail, metatags, computer code or programs, or deceptive or unfair practices involving Internet-related goods or services." Pet. Ex. 1, ¶ 41; Pet. Ex. 7 at 22.

6. The third resolution, File No. 082 3247, authorizes the use of compulsory process "[t]o determine whether unnamed persons, partnerships, corporations, or others have engaged in, or are engaging in deceptive or unfair acts or practices in or affecting commerce, in connection with making unauthorized charges or debits to consumers' accounts, including unauthorized charges or debits to credit card accounts, bank accounts, investment accounts, or any other accounts used by consumers to pay for goods and services." Pet. Ex. 1, ¶ 41; Pet. Ex. 7 at 23.

7. Respondent, CMS is a Utah limited liability company who is found, resides, or transacts business in Orem, Utah. Pet. Ex. 1, ¶ 6.[2]

## Jurisdiction and Venue

8. This Court has jurisdiction to enforce the Commission's duly issued CIDs under Sections 20(e) and (h) of the FTC Act, 15 U.S.C. §§ 57b-1(e), (h). Section 20(e) states as follows:

> Whenever any persons fails to comply with any civil investigative demand duly served upon him under this section …the Commission, through such officers or attorneys as it may designate, may file, in the district court of the United States for any judicial district in which such person resides, is found, or transacts business, and serve upon such person, a petition for an order of such court for the enforcement of this section.

This Court also has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345.

9. Venue is proper in this judicial district under Section 20(e) of the FTC Act, 15 U.S.C. § 57b-1(e), because CMS is found, resides, and transacts business here. Pet. Ex. 1, ¶ 6. Venue is also proper under 28 U.S.C. § 1391.

---

[2] Citations to exhibits are to paragraph numbers where available, or to page numbers that appear in exhibit footers.

**The Commission's Investigation**

10. CMS provides payment processing services for merchants. These services involve helping merchants obtain and maintain merchant accounts, so that those merchants can accept consumers' payments by credit and debit card. Pet. Ex. 1, ¶ 7.

11. Merchant accounts are available through financial institutions referred to as acquiring banks or "acquirers" that are members of the card networks (e.g., Mastercard and Visa). Without access to a merchant account through an acquirer, merchants cannot accept consumer credit or debit card payments. Pet. Ex. 1, ¶ 8.

12. The FTC started investigating CMS after discovering that CMS provided payment processing services for a significant number of FTC defendants engaged in unfair and deceptive practices, allowing those defendants the ability to accept consumers' credit and debit card payments. Pet. Ex. 1, ¶ 9.

13. The purpose of the investigation is to determine whether CMS, and its current and former officers and managers in their individual capacity, have engaged in deceptive or unfair acts or practices by providing payment processing services to merchants engaged in fraud. If CMS assisted or facilitated these merchants by processing payments from consumers that were either unauthorized or otherwise obtained illegally, this could violate the Telemarketing Sales Rule, 16 C.F.R. Part 310, or Section 5 of the FTC Act, 15 U.S.C. § 45. Pet. Ex. 1, ¶ 2.

## The Commission's 2017 CID to CMS

14. The Commission first issued a CID to CMS in August 2017 ("2017 CID") for documents and information pursuant to the Commission's Resolution Directing Use of Compulsory Process in a Non-Public Investigation of Unauthorized Charges to Consumers' Accounts (File No. 082-3247).[3]  Pet. Ex. 1, ¶ 14; Pet. Ex. 2.

15. The 2017 CID required CMS to respond to document requests and interrogatories on or before September 20, 2017.  Among other things, the 2017 CID seeks specific information and documents related to merchant accounts that CMS opened on behalf of defendants in FTC and other relevant law enforcement actions.  Pet. Ex. 1, ¶ 15.

16. The 2017 CID included document requests seeking communications between (1) CMS and merchant-clients that were the subject of a law enforcement inquiry, (2) CMS and any third-party about those clients, or (3) between CMS employees and agents regarding those clients.  They also cover other documents relating to CMS's processing for such merchants, including underwriting files.  Pet. Ex. 1, ¶ 16.

17. CMS's communications and documents related to merchant-clients that are the subject of law enforcement inquiries bear directly on CMS's knowledge of these clients' activities, including whether these clients are charging consumers illegally or without authorization. Pet. Ex. 1, ¶ 17.

18. The Applicable Time Period in the 2017 CID extends "until the date of full and complete compliance with this CID."  As instructed by the CID, upon compliance, the recipient "must certify that such responses are complete by completing the 'Form of Certificate of

---

[3] This same resolution was one of the three resolutions included in the 2019 CID.  *Supra* ¶ 6.

7

Compliance' set forth on the back of the CID form or by signing a declaration under penalty of perjury pursuant to 28 U.S.C. § 1746." Pet. Ex. 1, ¶ 18; Pet. Ex. 2 at 5.

19. CMS did not file a petition to limit or quash the 2017 CID. Pet. Ex. 1, ¶ 19.

20. CMS sought, and the FTC granted, an extension for CMS to respond to the 2017 CID, with CMS to produce all responsive documents and provide interrogatory responses by November 10, 2017. Pet. Ex. 1, ¶ 20.

21. CMS failed to meet this deadline. Among other things, CMS produced no responsive emails. Over the next few months, FTC counsel, including counsel in the FTC's Office of General Counsel, engaged in a series of discussions with CMS to cure the company's deficient production. These discussions uncovered unexpected obstacles, including that CMS had not properly run the FTC search terms, omitting some and using incorrect versions for others, further delaying CMS's production. Pet. Ex. 1, ¶ 21.

22. Ultimately, CMS did not substantially complete its production of documents and interrogatory responses to the 2017 CID until August 2018, a year after receiving the 2017 CID. Pet. Ex. 1, ¶ 22.

23. CMS never provided the certification of compliance required by the CID and FTC Act. Pet. Ex. 1, ¶ 23.

**CMS's Refusal to Provide Documents and Information in Response to the 2017 CID**

24. In August 2019, FTC counsel learned that CMS had received a law enforcement inquiry from the Utah Attorney General regarding the merchant accounts it provided to defendants in an action against a real estate seminar scheme brought by the Utah Division of Consumer Protection in this District on June 24, 2019. *Utah Div. of Consumer*

*Protection v. Troy Stevens*, No. 2:19-cv-00441-HCN (D. Utah 2019). Pet. Ex. 1, ¶¶ 24-25.

25. On August 14, 2019, FTC counsel sent a letter to CMS counsel, asking CMS to supplement its response to the 2017 CID with documents and interrogatory responses regarding the *Troy Stevens* merchant accounts. CMS did not do so. Pet. Ex. 1, ¶ 26; Pet. Ex. 3.

26. FTC counsel repeated its requests for documents and interrogatory responses regarding the *Troy Stevens* merchant accounts by email on September 5, 2019 and September 23, 2019. CMS did not produce any documents. Pet. Ex. 1, ¶ 27.

27. On September 30, 2019, the FTC and the Utah Division of Consumer Protection filed an action against another real estate seminar scheme in this District. *FTC v. Zurixx, LLC*, No. 2:19-cv-00713 (D. Utah 2019). Pet. Ex. 1, ¶ 28.

28. Separately, the FTC learned that CMS also provided payment processing services for individuals or entities that are the targets of two nonpublic ongoing FTC investigations ("FTC Investigation A" and "FTC Investigation B").[4] Pet. Ex. 1, ¶ 30.

29. On October 25, 2019 CMS counsel responded and stated that CMS was no longer required to comply with the 2017 CID. Pet. Ex. 1, ¶ 32; Pet. Ex. 6.

30. FTC counsel obtained certain information and documents regarding CMS's processing services for the *Zurixx* defendants and the targets of FTC Investigations A and B through third-party CIDs to CMS in the FTC investigations, and through documents obtained by the FTC through the *Zurixx* investigation and litigation. Those documents and information, however, did not include internal CMS emails regarding those merchants,

---

[4] The FTC is concurrently filing a Motion to Seal that seeks the Court's permission to redact the names of these entities.

nor answers to interrogatories regarding CMS's processing for those merchants. Pet. Ex. 1, ¶ 33.

31. On November 5, 2019, the FTC and the Utah Division of Consumer Protection filed *FTC v. Nudge, LLC et al.* in this District. No. 2:19-cv-00867 (D. Utah 2019). CMS provided payment processing services to the defendants in the *Nudge* action. Pet. Ex. 1, ¶ 34.

### The Commission's 2019 CID to CMS

32. Rather than engage in a further dispute over CMS's continued production obligations under the 2017 CID, on November 5, 2019, the Commission issued CMS a second CID for documents and information. Pet. Ex. 1, ¶ 35; Pet. Ex. 7. The CID required CMS to respond to document requests and interrogatories on or before November 19, 2019. Pet. Ex. 1, ¶ 43; Pet. Ex. 7 at 3.

33. The CID seeks documents and information about CMS's provision of payment processing services to the defendants in the *Troy Stevens*, *Zurixx* and *Nudge* matters, as well as CMS's services to the targets of FTC Investigations A and B. The specifications are closely modeled on Interrogatory 7 and Document Request 6 in the 2017 CID and are narrowly-tailored to obtain this information for the Commission's investigation. Pet. Ex. 1, ¶¶ 36-37; Pet. Ex. 7; Pet. Ex. 2.

34. This information is relevant to the FTC's investigation because CMS's communications and documents related to merchant-clients that are the subject of law enforcement inquiries bear directly on CMS's knowledge of these client's activities, including whether these clients are charging consumers illegally or without authorization. Pet. Ex. 1, ¶ 39.

35. Counsel for the FTC seek only those documents that CMS has not previously produced to the FTC. Pet. Ex. 1, ¶ 40; Pet. Ex. 7 at 16.

36. In issuing the 2019 CID, the Commission followed all the procedures and requirements of the FTC Act and its Rules of Practice and Procedure. *See, e.g.,* 15 U.S.C. §§ 57b-1(c)(2), (c)(3), (c)(7); 16 C.F.R. § 2.7. The CID was properly signed by Commissioner Rohit Chopra pursuant to the resolutions, as required by Section 20 of the FTC Act. *See* Pet. Ex. 7 at 3, 21-23; *see also* 15 U.S.C. § 57b-1(i); 16 C.F.R. § 4.4(a)(3).

37. The 2019 CID was served on CMS on November 8, 2019. Pet. Ex. 1, ¶ 42; Pet. Ex. 8. FTC counsel provided CMS's counsel with a courtesy copy on November 6, 2019. Pet. Ex. 1, ¶ 42; Pet. Ex. 9.

38. The deadline for CMS to file a petition to limit or quash the 2019 CID was November 19, 2019. 16 C.F.R. § 2.10(a)(1). CMS did not file any such petition. Pet. Ex. 1, ¶ 44.

39. On November 15, 2019, CMS and FTC counsel conferred by phone regarding the 2019 CID. CMS counsel indicated that it would not meet the CID's response date, but it would produce CMS's *Troy Stevens* underwriting files the following week and would provide more information about the scope of CMS's prior searches of its email system. Pet. Ex. 1, ¶ 45.

40. Rather than produce the *Troy Stevens* underwriting files, CMS counsel instead sent FTC counsel a letter on November 19, 2019 ████████████████████████ ████████████ Pet. Ex. 10. CMS did not seek an extension of the return date of the 2019 CID, nor did it file a petition to modify or quash the CID. Pet. Ex. 1, ¶ 46.

41. On November 22, 2019 contrary to the CID's instructions, CMS reproduced documents that it had previously produced in response to third-party CIDs issued in FTC Investigations A and B. Pet. Ex. 1, ¶ 47.

42. Also on November 22, 2019, FTC counsel sent CMS a letter noting that CMS had failed to comply with the 2019 CID. FTC counsel set forth a modified schedule by which CMS should comply with the CID, and attached a list of search terms that CMS should run in its email system to ensure that potentially responsive emails were located. FTC counsel also explained why the *Troy Stevens* files were relevant to the FTC's ongoing investigation of CMS's business practices. Pet Ex. 1, ¶ 48; Pet Ex. 11.

43. CMS did not respond to the FTC's modified CID production schedule. Instead, at a December 4, 2019 phone conference, CMS counsel stated that CMS was not prepared to discuss whether it would ultimately comply with the CID. Pet. Ex. 1, ¶ 49.

44. After the December 4, 2019 call, FTC counsel sent CMS a letter stating that CMS had failed to meet its obligations to respond to the 2019 CID and that, unless CMS complied with the CID by December 13, 2019, FTC counsel would proceed to seek judicial enforcement of the CID. Pet. Ex. 1, ¶ 50; Pet. Ex. 12.

45. On December 5, 2019, without prior notice to the FTC, CMS filed a declaratory judgment action in this District, seeking to obtain a judicial finding that CMS is not in violation of Sections 45(a) and 53(b) of the FTC Act. *CMS v. FTC*, No. 19-cv-00963 (D. Utah. 2019). Pet. Ex. 1, ¶ 51.

46. On December 13, CMS counsel sent FTC counsel a letter stating that CMS would not comply with the 2019 CID. Pet. Ex. 1, ¶ 53; Pet. Ex. 14.

47. CMS's refusal to comply with the 2019 CID has burdened, delayed, and impeded the FTC's investigation into CMS's payment processing-related conduct in connection with the various schemes described above. Pet. Ex. 1, ¶ 54.

**MEMORANDUM OF LAW**

*Introduction*

The FTC's 2019 CID to CMS seeks information—materials relating to CMS's dealings with its alleged fraudster-clients—that bears directly on the FTC's inquiry whether CMS itself engaged in law violations.  In an effort to impede the Commission's investigation, CMS has refused to comply with the 2019 CID.  CMS, however, has not advanced any principled reason for its refusal to comply.  Nor has it sought the proper administrative remedy by filing a petition to quash.  And, in a further effort to throw sand in the Commission's gears, CMS has now filed a declaratory judgment action attempting to forestall any potential law enforcement action.  The FTC will respond to that filing in due course and show why CMS is not entitled to relief.  But nothing that CMS alleges in that complaint or that CMS might claim in this proceeding undermines the FTC's authority to obtain the information it needs for its investigation.[5]

As we describe below, the FTC has plainly satisfied the test for enforcement of its compulsory process, and CMS has waived objections to the 2019 CID by failing to exhaust administrative remedies.  For these reasons, the Court should grant the FTC's petition and enforce its CID.

---

[5]   Most pertinent here, CMS's declaratory judgment action is not the proper forum for any challenge to the Commission's CID.  As the Supreme Court and other courts have recognized, by including provisions for judicial enforcement in the FTC Act, *see* 15 U.S.C. § 57b-1, Congress provided the exclusive method by which a recipient may seek judicial relief from a CID.  Any other challenges brought apart from this statutory process are thus outside of the district court's jurisdiction to consider.  *FTC v. Claire Furnace Co.*, 274 U.S. 160, 173-74 (1927); *Reisman v. Caplin*, 375 U.S. 440, 446 (1964); *accord Google, Inc. v. Hood*, 822 F.3d 212, 225 (5th Cir. 2016);  *Schulz v. Internal Revenue Service*, 395 F.3d 463, 464-65 (2d Cir. 2005); *Office of Thrift Supervision, Dept. of Treasury v. Dobbs*, 931 F.2d 956, 957 (D.C. Cir. 1991); *Belle Fourche Pipeline Co. v. United States*, 751 F.2d 332, 334-35 (10th Cir. 1984); *Wearly v. FTC*, 616 F.2d 662, 665 (3d Cir. 1980); *American Motors Corp. v. FTC*, 601 F.2d 1329, 1335-37 (6th Cir. 1979); *Blue Ribbon Quality Meats, Inc. v. FTC*, 560 F.2d 874, 876 (8th Cir. 1977); and *Howfield, Inc. v. United States*, 409 F.2d 694, 697 (9th Cir. 1969).

### I.      An Administrative Subpoena Issued Pursuant to a Legitimate Investigation and Seeking Reasonably Relevant Information Should be Summarily Enforced.

An agency may obtain judicial enforcement of an administrative subpoena[6] if the agency can show that the "demand is not too indefinite and the information sought is reasonably relevant to an investigation which the agency has the authority to conduct, and all administrative prerequisites have been met." *SEC v. Blackfoot Bituminous, Inc.*, 622 F.2d 512, 514 (10th Cir. 1980) (*citing U.S. v. Morton Salt Co.*, 338 U.S. 632, 652 (1950)).  Once an agency meets its initial burden, the burden shifts to the respondent to show cause why it should not have to comply with the subpoena.  *Solis v. CSG Workforce Partners LLC*, 2:11-cv-903, 2012 WL 1379310 at *2 (D. Utah April 20, 2012); *SEC v. Blackfoot Bituminous, Inc.*, 622 F.2d at 515 ("the burden of showing abuse is on respondents.").

Like any administrative agency, the FTC has broad authority to "investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *United States v. Morton Salt Co.*, 338 U.S. 632, 642-43 (1950).  A court's role in a proceeding to enforce an agency's investigative process is thus "strictly limited."  *FTC v. Texaco, Inc.*, 555 F.2d 862, 871-72 (D.C. Cir. 1977) (*en banc*) (citing *Endicott Johnson Corp. v. Perkins*, 317 U.S. 501 (1943)).  While the court's function is "neither minor nor ministerial," the scope of issues which may be litigated in a [compulsory process] enforcement proceeding must be narrow, because of the important governmental interest in the expeditious investigation of possible unlawful activity."  *Id.* at 872 (internal quotations omitted).

---

[6]     The FTC's civil investigative demands are a form of administrative subpoena.  *See, e.g., FTC v. Invention Submission Corp.*, 965 F.2d 1086, 1087 (D.C. Cir. 1992).

Accordingly, actions enforcing administrative process are "to be handled summarily and with dispatch[,]" so that valid subpoenas may be speedily enforced. *See In re: Office of the Inspector Gen'l, R.R. Retirement Bd.*, 933 F.2d 276, 277 (5th Cir. 1991); *SEC v. First Security Bank*, 447 F.2d 166, 168 (10th Cir. 1971); *see also Texaco*, 555 F.2d at 872 ("[T]he 'very backbone of an administrative agency's effectiveness in carrying out the congressionally mandated duties of industry regulation is the rapid exercise of the power to investigate . . . ." (quoting *FMC v. Port of Seattle*, 521 F.2d 431, 433 (9th Cir. 1975)). And, since administrative subpoena enforcement proceedings should be summary in nature and limited in scope, plenary procedures such as discovery are therefore disfavored. *Solis*, 2012 WL 1379310 at *2 (citing *EEOC v. Dillon Companies, Inc.*, 310 F.3d 1271, 1277 (10th Cir. 2002) (the 10th Circuit will not "either encourage or allow…a summary subpoena-enforcement proceeding [to turn] into a mini-trial…"); *see also FTC v. Carter*, 636 F.2d 781, 789 (D.C. Cir. 1980).

## II.     The 2019 CID is Within the Commission's Authority, Seeks Relevant Documents, and is Neither Indefinite nor Overly Burdensome.

The 2019 CID satisfies all the elements governing enforcement of FTC compulsory process. It is well within the Commission's authority, was properly issued, seeks information and documents relevant to the Commission's investigation, and is neither indefinite nor overly burdensome.

### A.     The 2019 CID is Within the Commission's Authority and Was Properly Issued According to All Administrative Prerequisites.

The Commission lawfully and properly issued the 2019 CID as part of an investigation into whether CMS and associated entities and individuals have violated the FTC Act. The FTC's authority to investigate and proceed against payment processors such as CMS for unfair or deceptive acts or practices is well-established. *See*, *e.g.*, *FTC v. Universal Management, LLC*,

877 F.3d 1234 (11th Cir. 2017); *FTC v. Wells*, 385 Fed. Appx. 712 (9th Cir. 2010); *FTC v. Neovi*, 604 F.3d 1150 (9th Cir. 2010).

To this end, the Commission issued the CID under Section 20 of the FTC Act, 15 U.S.C. § 57b-1, which authorizes the Commission to issue CIDs "[w]henever the Commission has reason to believe that any person may be in possession, custody, or control of any documentary material or tangible things, or may have any information, relevant to unfair or deceptive acts or practices." 15 U.S.C. § 57b-1(c)(1). In so doing, the Commission acted under no fewer than three valid agency resolutions authorizing the issuance of compulsory process to investigate the very types of conduct at issue here. Pet. Ex. 1, ¶ 41, n.4, Pet. Ex. 7 at 21-23. Finally, the Commission issued the 2019 CID consistent with all governing administrative prerequisites. Pet. Ex. 1, ¶ 41-43, Pet. Ex. 7; 15 U.S.C. §§ 57b-1(c)(2), (c)(3), (c)(7), (i) (requirements for form, content, and service of CIDs); *accord* 16 C.F.R. § 2.7(a), (b).

### B. The Documents and Information Sought are Relevant to the Commission's Investigation.

Administrative compulsory process is not limited to seeking information necessary to prove specific charges; to the contrary, a CID may call for documents and information that are "relevant to the investigation" – a boundary that may be broadly defined by the agency. *FTC v. Invention Submission Corp.*, 965 F.2d 1086, 1090 (D.C. Cir. 1992); *see also Solis,* 2012 WL 1379310 at *3 (citing *Phillips Petroleum Co. v. Lujan*, 951 F.2d 257, 260 (10th Cir. 1991)). So long as the requested information "'touches a matter under investigation," it will survive a relevancy challenge. *Sandsend Financial Consultants, Ltd. v. Federal Home Loan Bank Bd.*, 878 F.2d 875, 882 (5th Cir. 1989) (quoting *EEOC v. Elrod*, 674 F.2d 601, 613 (7th Cir. 1982)). The FTC's determination that information is relevant to its investigation should be accepted unless it is "obviously wrong." *Invention Submission*, 965 F.2d at 1089.

As stated in the 2019 CID, the subject of the FTC's investigation is whether CMS and affiliated entities and individuals have engaged in deceptive or unfair acts or practices by providing payment processing services when they knew or should have known that charges to consumers' accounts were unauthorized or obtained illegally, or by assisting and facilitating violations of the TSR. Pet. Ex. 7 at 6; 15 U.S.C. § 57b-1(c)(2). The 2019 CID's statement of the conduct under investigation is congruous with three authorizing resolutions issued by the Commission. Pet. Ex. 7 at 6, 21-23.

The 2019 CID seeks information that goes to the heart of the FTC's investigation of CMS. It requires CMS to produce documents and respond to interrogatories about specified CMS merchant-clients that are currently under investigation or that are the subject of law enforcement proceedings for unfair or deceptive practices. Pet. Ex. 7 at 6-14. Reviewing CMS's documents and answers to interrogatories with respect to these merchants will help the FTC assess what role, if any, CMS played in these unfair or deceptive practices. Pet. Ex. 1, ¶ 39. As such, these requests more than meet the "broad" and "relaxed" standard of relevance that applies in administrative investigations. *Invention Submission*, 965 F.2d at 1090. Indeed, they aim directly at the central question of whether CMS may be held liable for its conduct involving these merchant-clients. *See generally Texaco*, 555 F.2d at 874. Accordingly, the information sought is reasonably relevant to the FTC's investigation of CMS.

  **C.**  **The CID is Neither Indefinite Nor Overly Burdensome.**

A CID is sufficiently definite when it describes the required information such "that a person can in good faith understand which documents must be produced." *RTC v. Greif*, 906 F. Supp. 1446, 1452 (D. Kan. 1995) (citing *In re Grand Jury Proceedings*, 601 F.2d 162 (5th Cir. 1979)); *cf.* 15 U.S.C. § 57b-1(c)(3)(A) (FTC CIDs for documents must identify the material to be

produced "with such definiteness and certainty as to permit such material to be fairly identified"). The 2019 CID meets this definition because all of its specifications and definitions are plainly expressed and easily understandable. Indeed, CMS has never argued otherwise.

Moreover, any alleged imprecision in the CID would not give rise to a claim of undue burden. To establish such a claim, CMS would have to show that compliance with the FTC's CID "threatens to unduly disrupt or seriously hinder [the] normal operations of [its] business." *Texaco, Inc.*, 555 F.2d 882 & n.52. CMS has no basis to make such a claim. The 2019 CID seeks documents and information about five specific sets of merchant-clients for which CMS has provided payment processing services, for a limited time period that applies to all but one specification of the 2019 CID. Pet. Ex. 7 at 6, 11. The 2019 CID also prescribed a reasonable return date of two weeks from the date of issuance. This deadline was more than reasonable for CMS to assemble the specified documents and prepare its responses to interrogatories, especially given the fact that the FTC first notified CMS of its interest in certain of these merchant-clients over three months before the 2019 CID's return date. Pet. Ex. 1, ¶ 26. And, although staff invited CMS to do so, CMS never sought any extension or modification of the time to respond on *any* grounds, including burden.

### III.   CMS Has Waived Any Challenges to the 2019 CID by Failing to Raise Them Before the FTC.

CMS has waived any challenges it may have made to the 2019 CID. It is a longstanding principle of law that a party must exhaust its administrative remedies before seeking relief in court. *McKart v. United States*, 395 U.S. 185, 193-94 (1965); *E.E.O.C. v. Cuzzens of Georgia, Inc.*, 608 F.2d 1062, 1063 (5th Cir. 1979) ("Generally, one who has neglected the exhaustion of available administrative remedies may not seek judicial relief."); *accord Forest Guardians v. US Forest Service*, 641 F.3d 423, 433 (10th Cir. 2011) ("Claims not properly raised before an

18

agency are waived, unless the problems underlying the claim are 'obvious' or otherwise brought to the agency's attention.") (citing *Forest Guardians v. US Forest Serv.*, 495 F.3d 1162, 1170 (10th Cir. 2007) (quoting *Dept. of Transp. v. Pub. Citizen*, 541 U.S. 752, 764 (2004)).

That principle applies equally to FTC compulsory process enforcement. *See*, *e.g.*, *United States v. Morton Salt Co.*, 338 U.S. 632, 653-54 (1950); *American Motors Corp. v. FTC*, 601 F.2d 1329, 1332-37 (6th Cir. 1979); *FTC v. O'Connell Assocs., Inc.*, 828 F. Supp. 165, 168-70 (E.D.N.Y. 1993); *FTC v. Tracers Information Specialists, Inc.*, No. 8:16-mc-00018-VMC-TGW, 2016 WL 3896840, at *4 (M.D. Fla. June 10, 2016). Congress and the FTC have provided CID recipients with an administrative remedy to quash or narrow the request, *see* 15 U.S.C. § 57b-1(f); 16 C.F.R. § 2.10, and the failure to use that remedy thus waives any challenge to the CID. The "failure to comply with the administrative procedure provided by the statute and the implementing regulations bars . . . assertion of substantive objections to the CID in court." *Tracers*, 2016 WL 3896840, at *4; *see also O'Connell Assocs., Inc.*, 828 F. Supp. at 170.

CMS had ample opportunity to raise any concerns it may have with the 2019 CID with the Commission, but it chose not to do so. CMS has never petitioned the FTC to limit or quash the 2019 CID. In fact, CMS neither sought an extension of the return date nor asked to modify the CID. Instead, nearly one month after the 2019 CID's return date, CMS simply informed staff that it did not intend to comply with the 2019 CID, *at all*. Having failed to avail itself of administrative remedies, CMS may not now assert any objections it could have raised to the Commission as defenses in this CID enforcement proceeding.

## Prayer For Relief

WHEREFORE, the Commission invokes the aid of this Court and prays:

a. For the immediate issuance of an order directing CMS to appear and show cause why it should not comply in full with the 2019 CID;

b. For a prompt determination of this matter and an order requiring CMS to fully comply with the 2019 CID within ten (10) days of such order, or at such later date as may be established by the Commission; and

c. For such other relief as this Court deems just and proper.

Dated: December 23, 2019          Respectfully submitted,

ALDEN F. ABBOTT
General Counsel

Michele Arington
Assistant General Counsel for Litigation

/s/ Christine M. Todaro
Christine M. Todaro
Laura Basford
Benjamin R. Davidson

Attorneys for Petitioner